No. 18,180.

Leon Kepler, as Executor, etc. *v*. James Burns.
(324 P. [2d] 785)

Decided April 29, 1958.

Messrs. Sandhouse & Sandhouse, for plaintiff in error.

Mr. JAMES J. DELANEY, Mr. LLOYD E. CHRISTIANSEN, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

PLAINTIFF in Error is the Executor of the Estate of Emmett S. Burns, deceased, and will herein be referred to as Executor. Defendant in error James Burns, a son of decedent, will be referred to by name.

This action was commenced November 25, 1955, by the Executor to recover from James Burns the sum of $4,510.84 claimed to be due as interest on the purchase price of certain lands which the Executor offered for sale, and which were bid in by James Burns, as hereinafter set forth.

After issue joined, trial to the court resulted in a dismissal of the Executor's complaint after he had introduced all his evidence. From this judgment the Executor brings the case here for review on writ of error.

It appears decedent Emmett S. Burns died seized and possessed of a vast amount of land. By his will, after certain specific bequests, it was directed that his property be converted into cash and the residue divided equally among ten of his heirs, including James Burns. Pursuant thereto the Executor petitioned the county court for an order to sell the real estate, consisting of thirteen parcels, and thereafter issued a "Notice Inviting Bids" therefor, which notice recited that any bid accepted required a deposit of 15% of the bid price to be deposited with the Executor. The notice also provided "The terms of sale in each case will be Cash upon delivery to purchaser of an Executor's Deed, conveying the parcel or parcels purchased by each successful bidder." James Burns offered some $113,000 for five of the parcels of this land; his bid was accepted and he

deposited 15% of the bid price with the Executor on or about September 21, 1951. Other tracts of decedent's land were purchased by other legatees and devisees under the will of decedent. James Burns entered into possession of the land bid in by him on about March 1, 1951, and the sale was confirmed by the county court on September 21, 1951.

The record discloses that under date of March 17, 1953, a letter was addressed "To the Legatees and Devisees under the terms of the Last Will and Testament of Emmett S. Burns, Deceased," by Raymond M. Sandhouse counsel for the executor, which letter recited proceedings relating to the income taxes due from the estate, and made reference to a partial distribution of the estate which was contemplated. This letter further advised: "* * * in view of the above condition, a conference was held by Judge Kepler (plaintiff in error) Mr. Hastings and myself, at Holyoke, on Friday, March 13, and the conclusion was reached that it is now necessary to finally close all of the outstanding real estate transactions. In other words, notice is given to all of the legatees and devisees who have purchased lands of the estate and who have heretofore made the down payments, that the full balance of the purchase price must be paid by each purchaser to Judge Kepler on or before April 10, 1953."

The letter also contained the following: "It was appreciated that the purchases by members of the family had been made with the intent and purpose to apply as much of their legacies as possible toward the payment of such purchase price of real estate, and we feel that the plan now arrived at will conform to this arrangement as nearly as possible under the circumstances which have been materially changed by reason of the unexpected claims for Income Taxes.

"To those of the legatees and devisees who at this time owe balances on the purchase price of real estate from the estate, this letter may be considered a notice

to complete all arrangements and to make payment of the balance due to the Executor not later than April 10, 1953."

It is not disputed that the defendant in this action, who was one of the legatees and devisees under the will, received this notice and paid the balance of his bid on April 9, 1953.

No tender of an executor's deed was made until the Sandhouse letter of March 17, 1953.

█ The terms of the "Invitation to Bid" were clear and unambiguous. We repeat the language therein contained: "The terms of the sale in each case will be Cash *upon delivery to purchaser of an Executor's Deed* conveying the parcel or parcels purchased by each successful bidder." (Emphasis supplied.) We hold that the executor was in duty bound to tender a deed before James Burns could be considered in default or held liable for interest on the unpaid 85% of the purchase price of the land.

The will of decedent was admitted to probate in the forepart of 1951. Bids for the land were solicited to be received by the executor on or before August 29, 1951. Obviously time was required to perfect the title to the lands bid upon by James Burns, because the state and federal inheritance and estate taxes had to be adjusted as indicated by the communication of March 17, 1953, which states that a dispute concerning federal income taxes had arisen, which even in 1953 had not been settled. It is plain that until all these matters were adjusted, a clear title could not be conveyed to James Burns by the executor. The letter of March 17, 1953, was the first and only communication James Burns had from the executor relative to a delivery of the deed or the payment of the purchase price for the land.

The facts are not in dispute, and at the conclusion of the evidence on behalf of plaintiff, the trial court sustained a motion to dismiss the action, stating: "That the facts are not challenged as a matter of law a ques-

tion is raised which may be summarized as follows: Is an executor of an estate entitled to interest on land sold through probate court immediately upon order of court confirming the sale when the vendee is in possession but in the absence of an overt tender of the deed by the executor and in the absence of demand for interest when the deed and abstract were finally tendered and payment made? This must be answered in the negative."

This statement by the trial judge amply covers the matters submitted by the executor under the writ of error sued out by him to review the trial court's decision.

This appears to have been largely a family affair. No deed was tendered prior to March 17, 1953, and no demand made on James Burns to pay the remaining 85% of his bid. The letter of March 17, 1953, aptly discloses a course of action in which all parties concurred, viz. that before the controversy regarding federal taxes arose, the several heirs, legatees and devisees who purchased land intended to apply their distributive share in the estate to the liquidation of the indebtedness. Then came the communication of March 17, 1953, advising that balances due must be paid in full on or before April 10th. James Burns complied with this demand. Nothing further was done until November 25, 1955, when the instant action was filed demanding that James Burns pay 6% interest on the 85% of his bid "representing interest at six per centum per annum from *January 1, 1952,* up to and including April 13, 1953, on the balance of purchase price of the parcels of land so purchased by said defendant * * *."

*Hoagland v. Murray,* 53 Colo. 50, 123 Pac. 664, states the rule:

"The promises were mutual, and each afforded a remedy on default of the other. Plaintiff could not be in default until the purchase price was tendered and Defendant could not be in default until time expired within which he had to comply. In other words * * * payment of the purchase money and making tender of

conveyance were to occur simultaneously; that is, the covenant to pay and the covenant to deed are dependent obligations, and each is a condition precedent to the other * * * Under such a contract, the rule is settled, as decided in *Byers v. Denver Circle R. Co.*, 13 Colo. 552 (a case mentioned by the trial court in this case) 'as long as neither party makes tender of the deed on one hand, or payment on the other, neither party is in default and the contract subsists.' "

■ The same rule was announced in *Walker Inv. Co. v. Fleming*, 79 Colo. 434, 246 Pac. 207, where this court said:

"When the obligations of a contract for sale and purchase of land are mutual and concurrent, so long as one party makes no tender of a deed and the other no offer of payment, neither is in default."

See, also, 55 Am. Jur. 580, Vendor and Purchaser where it is stated:

"Where, by contract, conveyance is to precede payment, a tender of a deed is a condition precedent to an action for the purchase price. Also, where the time for the conveyance is stated, or the right to fix such time is given to the purchaser and no time for payment is stated, the law implies the sale is for cash and the vendor has the right to demand payment *only* on the tender of the conveyance." (Emphasis supplied.)

■ It is contended by counsel for the executor that a different rule should apply in the case at hand then applies in the ordinary action, because here the executor was acting under orders of the probate court. In the absence of fraud or collusion on the part of the purchaser, no reasons appear for preferential treatment of an executor or administrator. A review of the record discloses that the executor was also the judge of the County Court of Phillips County, Colorado, and he stepped out of this role temporarily to act as executor of decedent's will. He called in other judges to enter the court orders, and it is manifest that he was at all

times represented by very able counsel in the discharge of his duties as executor.

The record discloses that in 1955 beneficiaries of the estate, who did not purchase land under the "Invitation to Bid" objected to the executor's final report in the estate. As a result of this proceeding the acting judge surcharged the executor with interest on the several amounts bid for the land as were not "adjusted." Under this order, entered in a proceeding in which James Burns was not a party, the executor appropriated to the estate the sum of $2,500.00, part of the distributive share due James Burns under the will of his father. The propriety of this order respecting the $2,500.00 is not before us.

■ If a fiduciary in some way deviates from, or neglects, his duty, as by delay in collecting the proceeds of a sale, this in no way impairs the validity of the sale, but it may render the fiduciary liable for his own neglect or misconduct. It then becomes a personal matter between the fiduciary and the court under whose authority he acts. In no way does it impute to the buyer a liability for such conduct in the absence of such wrongdoing or collusion as to place him in pari delictu with the fiduciary. The letter of March 17, 1953, discloses the true situation and absolves the defendant of any responsibility for the delay in completing the transaction, and he cannot be held for the alleged inaction of the executor.

The judgment of the trial court is affirmed.