No. 19,393.

JAMES BURNS *v.* LEON KEPLER, AS EXECUTOR OF THE
ESTATE OF EMMETT E. BURNS, DECEASED.
(362 P. [2d] 1037)

Decided July 3, 1961.

Mr. JAMES J. DELANEY, for plaintiff in error.

Messrs. SANDHOUSE AND SANDHOUSE, for defendant in
error.

*In Department.*

Opinion by Mr. Justice McWilliams.

The dominant issue presented by this writ of error is whether *Kepler v. Burns,* 137 Colo. 329, 324 P. (2d) 785, renders res judicata the present proceeding. Accordingly, reference is hereby made to *Kepler v. Burns,* supra, for a more detailed chronology of the facts giving rise to this long standing dispute between Leon Kepler, as executor of the estate of Emmett S. Burns, deceased, and James Burns, son of the deceased. However, to adequately understand the problem here to be resolved a brief recital of the facts is necessary. Emmett S. Burns, a resident of Phillips County, died testate in 1951 and by his last will and testament nominated Leon Kepler, then and now County Judge for Phillips County, to serve as executor of his estate. Judge Kepler qualified as executor and has served as such ever since. Since Judge Kepler could not "sit on his own case" the county judge from nearby Logan County has acted as judge in this matter for the approximately ten years the estate has remained open.

In the summer of 1951, shortly after his qualification as executor, Judge Kepler, as executor, advertised the lands of the estate for sale to the highest bidder, the advertisement reading in part as follows: "The terms of sale in each case will be cash upon delivery of an Executor's Deed conveying the parcel or parcels purchased by each successful bidder." The advertisement also provided for sealed bids accompanied by 15% of the bid price. James Burns, plaintiff in error, was the successful bidder on certain lands of the estate, these lands being referred to both in the prior case between these same parties and also in the instant proceeding as parcels 2, 3, 4, 5 and 12. Judge Kepler, as executor, accepted Burns' bid and the sale was confirmed by the county court on September 21, 1951. With the knowledge and consent of the executor, James Burns took actual possession of these lands on or about January 1, 1952, even though

85% of the total purchase price still remained to be paid. On March 17, 1953, Kepler, as executor, wrote Burns, as well as other purchasers of land belonging to the estate, as follows:

"Notice is given to all the legatees and devisees who have purchased lands of the estate and who have heretofore made the down payments, that the full price must be paid to Judge Kepler on or before April 10, 1953."

In response to this notice James Burns on April 9, 1953, paid the balance due on the lands purchased by him and received executor's deeds in exchange therefor.

In 1955 Judge Kepler, as executor, tendered his final report, whereupon certain of the beneficiaries (other than James Burns!) filed objections thereto and urged, inter alia, that the executor had been derelict in his duty by failing to demand and receive from those who had purchased lands from the estate the full purchase price for the lands *when sold*. This dispute was referred to a Master who ruled that a purchaser of lands from the estate was liable for interest on the unpaid portion of the total purchase price for the period of time commencing with the purchaser's entry into possession and continuing until the balance of the purchase price was paid to the estate. Accordingly the Master ordered that in each such instance the sale price should be "adjusted" to include this additional amount and in the event the executor was unable to effect such an "adjustment," then he was to be surcharged with such amount.

Apparently all of the purchasers of land from the estate accepted this "adjusted" sales price and paid the additional sum, except Burns, who resisted the demand of the executor. As a result the executor instituted action in the district court of Phillips County to collect from Burns the sum of $7,100, allegedly representing interest at the rate of 6% on the unpaid balance due on lands purchased by Burns from January 1, 1952, the date he took possession, to April 9, 1953, the date of final payment. This action culminated in *Burns v. Kepler,*

supra, and a determination by this Court that Burns was not thusly liable to the estate.

On July 1, 1959, Judge Davis, sitting as the county judge for Phillips County, on request of the executor issued a citation directing James Burns to appear before the court and account for the rents, issue and profits from his occupancy, allegedly as a tenant, of these lands which Burns had "purchased" from the estate. Hearing on this citation was held on February 16, 1960, at which time counsel stipulated that the lands which Burns allegedly occupied as a tenant of the estate from January 1, 1952, to April 9, 1953, were parcels 2, 3, 4, 5 and 12, which were the identical subject matter of the earlier litigation between Kepler and Burns. It was further stipulated that Burns had not paid any rent therefor, nor had he accounted for any profits derived therefrom. With no other evidentiary matter before it the trial court proceeded to enter an order "that James Burns attorn to the executor of said estate for the rents, issues, and profits from the described lands [parcels 2, 3, 4, 5 and 12] from the term January 1, 1952 to April 9, 1953." From this order James Burns seeks reversal by writ of error.

It is the position of plaintiff in error that *Kepler v. Burns,* supra, renders res judicata the issue attempted to be raised by the petition of July 1, 1959, and the ensuing order of February 16, 1960, and as a corollary of this assignment of error it is also urged that Kepler, as executor, having elected in his earlier action to treat Burns as a vendee in possession of the land involved for the period from January 1, 1952, to April 9, 1953, is now estopped to maintain any accounting action based on the premise that Burns was *not* a vendee in possession, but a tenant of the estate during this same period of time. In response to the claim of res judicata the only rejoinder here made by Kepler, as executor, is that this Court in *Kepler v. Burns,* supra, "specifically sets forth that the issue now presented [in the instant case] was not con-

sidered by the Court," and as a basis for this conclusion counsel cites the following language from that opinion: "Under this order, entered in a proceeding which James Burns was not a party, the executor appropriated to the estate the sum of $2,500, part of the distributive share due James Burns under the will of his father. The propriety of this order respecting the $2,500 is not before us." The quoted language simply does not support the position advanced by the executor and we now hold that *Kepler v. Burns,* supra, does render res judicata the issue now sought to be raised by the citation and order requiring Burns to account for the rents, issues and profits from parcels 2, 3, 4, 5 and 12 for the period of time from January 1, 1952, to April 9, 1953.

In the earlier action between the identical parties Kepler, as executor, elected to proceed on the premise that Burns was a vendee in possession of the lands here involved and that being such he was liable for interest on the unpaid balance then due on the total purchase price. In the former opinion this Court approved the finding made by the trial court that Burns from January 1, 1952, to April 9, 1953, was a "vendee in possession," thus negating the possibility that for the same period of time he was also a tenant.

The doctrine of res judicata not only precludes subsequent litigation of the issues already actually litigated by the parties, but also precludes subsequent litigation between the same parties of any issues which might properly have been determined in the prior action, even though not litigated. See 30 A Am. Jur. 441, Judgments §371, 372, *Newby v. Bock,* 120 Colo. 454, 210 P. (2d) 985, and *Viles v. Prudential Insurance Co. of America,* 124 F. (2d) 78. A comparison of the present action and *Kepler v. Burns,* supra, reveals an identity of subject matter, an identity of the facts giving rise to the respective claims, an identity of the parties to the action, and finally an identity of capacity in the persons for or against whom a claim is made. True, in the earlier action

Kepler, as executor, proceeded on the premise that Burns was a vendee in possession of parcels 2, 3, 4, 5 and 12 from January 1, 1952, to April 9, 1953, whereas in the present proceedings he contends that Burns was the lessee of these same lands for the same period of time. But such does not render inapplicable the doctrine of res judicata, which is a complete answer to the citation served on Burns and the order entered in connection therewith.

Accordingly the judgment is reversed and the cause remanded with directions to the county court to vacate its order of February 16, 1960, commanding Burns to "attorn to the executor of said estate for the rents, issues, and profits from the described lands from the term January 1, 1952, to April 9, 1953," and to dismiss the citation.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.